W. F. TRIMBLE AND SONS COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 105040. Promulgated January 26, 1943.

*Walter W. McVay, Esq.*, for the petitioner.
*Charles Oliphant, Esq.*, for the respondent.

484

OPINION.

DINSEY, *Judge:* Three questions here are presented: Has the statute of limitations run as to assessment for the year 1935? Did the respondent err in denying the depreciation claimed by the petitioner? Did he err in adding to the petitioner's income on the ground that the petitioner's system of computing income from long term contracts did not clearly reflect income?

The three-year period of limitations upon assessment had admittedly expired on the date of the deficiency notice. Therefore the respondent had the burden of showing an exception to section 275 (a), Revenue Act of 1934,[1] under section 275 (c),[2] which permits assessment within five years from the date of filing return. *Bonwit Teller & Co.*, 10 B. T. A. 1300; *Farmers Feed Co.*, 10 B. T. A. 1069; *Foster v. Commissioner*, 131 Fed. (2d) 405. The five-year period had not run. He could meet that burden by showing that the petitioner had omitted in excess of 25 percent of the amount of properly includible gross income stated in the return. *C. A. Reis*, 1 T. C. 9. The petitioner, under the general heading "Gross Income" on its return, reported a total of $94,256.77, which included $68,347.75 "gross profit where inventories are not an income-determining factor." (However, inventories were actually considered in reporting income.) The respondent in computing the deficiency added

---

[1] SEC. 275. PERIOD OF LIMITATION UPON ASSESSMENT AND COLLECTION.
Except as provided in section 276—
(a) GENERAL RULE.—The amount of income taxes imposed by this title shall be assessed within three years after the return was filed, and no proceeding in court without assessment for the collection of such taxes shall be begun after the expiration of such period.

[2] (c) OMISSION FROM GROSS INCOME.—If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 per centum of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 5 years after the return was filed.

thereto $39,707 on the theory that in computing income upon long term contracts the petitioner's method did not clearly reflect income. The $39,707 is, of course, much more than 25 percent of $94,256.77. If the $94,256.77 is the amount of "gross income stated in the return" within the intent of section 275 (c) and if the $39,707 was "properly includible" in gross income, it is apparent that the respondent has met his burden. The petitioner suggests that there were in 1935 total gross receipts of $1,433,705.45 from construction and building work, that therefore the $39,707 is not 25 percent of gross income, and that the latter amount can not be said to have been improperly omitted, for the reason that petitioner's return for 1935 was computed upon the same basis as had been used for many years, that the petitioner could not have changed its basis without the Commissioner's permission, that the intent of section 275 (c) was to affect those taxpayers so grossly negligent as to omit 25 percent of properly includible gross income, and that, since the petitioner reported in its accustomed manner and could not without permission have done otherwise, it was not thus negligent or within the intendment of the statute. Therefore petitioner argues we have here no omission from properly includible gross income, but an increase in gross profit brought about by the action of the Commissioner. Section 275 (c) refers to 25 percent of gross income "stated in the return." Even though gross receipts were much greater, the petitioner *stated in the return* $94,256.77 as gross income, and we think the 25 percent must be computed upon the amount so stated, despite greater gross receipts. The petitioner, under its method, nowhere indicated on the return any gross receipts. It reported in that respect only the profit from "building account," and obviously intended such to be regarded as gross income. Section 275 (c) plainly means to base the 25 percent not upon other proof of receipts, but upon the return *as made* by the taxpayer and his computation of gross income therein. We think that it requires us to consider $94,256.77 as gross income. Nor can we agree with the petitioner's view that there was not omission, but merely addition on the Commissioner's theory. Though it may be true that on petitioner's customary and theretofore used manner of reporting, it had "omitted" no gross income properly includible, yet the fact remains that it did not report an amount in excess of 25 percent of gross income as reported, under the respondent's view of what was "properly includible" gross income, i. e., if the $39,707 added to gross income by the Commissioner was properly includible, that amount had in fact been omitted. We conclude therefore that our only question is whether the amount added was properly includible. This depends upon whether the petitioner's income was properly

computed, and in turn requires examination of the petitioner's position with respect to manner of reporting income from long term contracts. The respondent has the burden of showing that the petitioner's method did not properly reflect income.

In the case of most of its long term contracts the petitioner's books were kept and returns were prepared upon the basis of "percentage of completion," under Regulations 86, article 42–4 (a), relative to long term contracts, to the extent that clients were billed in accordance with engineers' determinations of percentage of work completed. Costs actually incurred were entered upon the books, and income tax returns reflected the difference between billings and costs. A very similar system was, in *Hegeman-Harris Co.* v. *United States*, 23 Fed. Supp. 450, regarded as the "percentage of completion" system; and the Commissioner so determined here, but determined in effect that it did not clearly reflect income.

Section 41, Revenue Acts of 1934 and 1936,[3] though providing first for the use of a regularly used method, provides also that, if "the method employed does not clearly reflect the income," computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect income. An accounting method, though consistently used by the taxpayer, is not conclusive, and if the method does not clearly reflect income, computation is to be made upon a basis which in the Commissioner's opinion will do so. *Brown* v. *Helvering*, 291 U. S. 193; *Lucas* v. *American Code Co.*, 280 U. S. 445.

We think that *Hegeman-Harris Co.* v. *United States*, *supra*, is authority that the petitioner's method here does accurately reflect income. In both cases actual expenses were deducted from bills sent clients, and overhead expenses were separately used as deductions. The Court of Claims regarded clear reflection of income shown because, in that case, "Where the profits or losses under the foregoing method differed from the correct profits and losses determined on the completion of a contract, compensating adjustments were made upon completion of the work." In the instant case the same situation exists as to compensating adjustments. The petitioner's method necessarily involved adjustment of each contract in the year of completion, for in that year only the remainder of costs expended and the

---

[3] SEC. 41. GENERAL RULE.

The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income. If the taxpayer's annual accounting period is other than a fiscal year as defined in section 48 or if the taxpayer has no annual accounting period or does not keep books, the net income shall be computed on the basis of the calendar year. (For use of inventories, see section 22 (c).)

remainder of billings within the contract price showed upon the books. All contracts but two ended in 1937, and in that year adjustments were made to offset insufficient profits or losses taken into 1935 and 1936. Considering such adjustment, the situation is indistinguishable from that in the *Hegeman-Harris* case. Any deviations from yearly accuracy in reflecting income are offset by the final reconciliation at the end of the contracts, in much the same way as in case of on the permissible completed contract basis. In effect the contracts were in the last year closed on that basis, and reconciliation was made for differences because of previous estimates.

We conclude and hold that the petitioner's method of reporting clearly reflected its income, for both taxable years, that as to 1935 the respondent has failed in his burden of showing otherwise, and therefore of showing that more than 25 percent of properly includible gross income was omitted from the petitioner's return for 1935. Indeed, the Commissioner did not consistently follow his own theory, for he transferred some items, such as on the Pittsburgh Joint Stock Yards contract and the Pennsylvania Railroad account, to other years rather than allocate profit or loss according to ratio of cost. It follows that the statute of limitations on assessment had run at the time of the issuance of the deficiency notice as to the year 1935. For the year 1936, the petitioner had the burden of proof, but it follows from the above that the Commissioner erred in adding to petitioner's income for that year.

There only remains for consideration the question of depreciation claimed in both taxable years, but under our conclusion above as to the statute of limitations, considered here as to 1936 only: The petitioner has the burden of showing erroneous the determination made by the respondent. The only evidence offered was that a graduate civil engineer, long in the petitioner's employ, testified that he was familiar with the company's depreciable equipment, had purchased much of it and used it, was familiar with the ordinary life of depreciable assets and with the depreciation deducted by the petitioner in 1935 and 1936, and from his experience and knowledge of the assets of the petitioner he believed that the 33⅓ percent depreciation deduction claimed was reasonable and reflected the life of the asset. In our opinion such showing is altogether insufficient to show error in the determination of the Commissioner, and we so hold, with reference to the year 1936.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

KERN, *J.*, concurs only in the result.