Ohio Fruit Products Co., Inc. v. Commissioner.
Ohio Fruit Prods. Co. v. Commissioner
Docket No. 20162.
United States Tax Court
1951 Tax Ct. Memo LEXIS 333; 10 T.C.M. (CCH) 125; T.C.M. (RIA) 51040; January 31, 1951
S. Y. Rossiter, Esq., for the petitioner. Kalman A. Goldring, Esq., for the respondent. DISNEY
Memorandum Findings of Fact and Opinion DISNEY, Judge: There are involved in this case deficiencies determined, and penalties, for the taxable year ended May 31, 1943, as follows: Penalties
25%
50%
Tax
Amount
penalty
penalty
Income tax
$ 779.38
$ 389.69
Declared value ex-
cess profits tax
3,354.80
1,677.40
Excess profits tax
19,451.58
$4,862.90
9,725.79 The penalties, except the delinquency penalty of $4,862.90 for *334 failure to file excess profits tax return, were claimed under section 272 (e) of the Internal Revenue Code by respondent in its amended answer to the petition, as amended. The primary questions presented are: (a) Whether the three-year statute of limitations has expired on assessment, under section 275 (a) of the Internal Revenue Code, or the statutory period is five years because of omission from the return of 25 per cent of the amount of gross income stated therein, under section 275 (c) of the Code; (b) whether the petitioner included in its return fictitious accrued accounts payable with intent to evade tax; and (c) whether petitioner should have filed an excess profits tax return. From admitted allegations and evidence adduced, we make the following Findings of Fact Petitioner is a corporation organized and existing under the laws of the state of Ohio, with its office and principal place of business at Smedley Street, North East, Pennsylvania. Petitioner filed its corporation income and declared value excess profits tax return for the fiscal year ended May 31, 1943, with the collector of internal revenue at Cleveland, Ohio. *335 Such return was timely filed on October 15, 1943. Petitioner reported gross sales of $228,472.27 less $1,278.30 returns and allowances, leaving $227,193.97, cost of goods sold $197,005.98, leaving "gross profit from sales" of $30,187.99. "Other income" of $229.20 (purchase discount) is added, and "Total income" is therefore reported as $30,417.19. The $197,005.98 cost of goods sold is explained in the return as follows: Inventory at beginning of year
$ 13,242.38
Material or merchandise bought for
manufacture or sale
148,272.29
Salaries and wages
24,996.08
Other costs per books
21,791.73
Total
$208,302.48
Less inventory at end of year
11,296.50
Cost of goods sold
$197,005.98
The balance sheets, attached to the return, showed, among liabilities, accounts payable of $19,216.30 and $36,422.05 at the beginning and end of the year, respectively. The $36,422.05 accounts payable consisted of the following items: Regular trade accounts payable
$15,821.43
Salary payable - J. E. Rahal
5,997.05
Brokerage payable - F. E. Rahal
5,000.00
Other liability - J. E. Rahal
3,276.40
Economy Produce Co.
2,592.35
Economy Produce Co.
3,375.00
Phillips Lithography Co.
359.82
$36,422.05
*336 The items totaling $36,422.05 were orally furnished to Louis A. Blue, the accountant-attorney who prepared the return, by J. E. Rahal, petitioner's president and manager (except that $997.05 of the $5,997.05 "salary payable - J. E. Rahal" appeared in the trial balance as a credit balance to J. E. Rahal), and the above items constituting to $36,422.05 were not taken from any books or records. Blue prepared the trial balance from figures given him by petitioner's bookkeeper, made the adjustments entering into the $36,422.05, made a profit and loss statement, and therefrom prepared the petitioner's return. He made no other adjustments to the books and records of the petitioner for the year ending May 31, 1943. He did not know whether the petitioner then had books and records. The books and records of petitioner were not, prior to the issuance of the statutory notice of deficiency, which was mailed on June 9, 1948, shown to the revenue agent who investigated the case, though he was in petitioner's office from 100 to 150 times and asked on several occasions to see them. He did not ask for them more often because he was told they were not available. The balance appearing in the petitioner's *337 accounts payable control account on June 1, 1943, the end of the fiscal year here involved, was $30,425. Various debits totaling $86,409 between June 1, 1943 and August 31, 1946, and various credits during that same period in the amount of $82,284.99, resulted in this account showing a balance at August 31, 1946, in the amount of $26,300.99. No records were kept of individual controls of accounts payable. There was no accounts payable ledger. Accounts payable were not carried. The accounts payable control was never adjusted until 1947 when a journal entry was made debiting accounts payable and crediting merchandise purchases $26,300.99. From June 1, 1943 to May 31, 1944, approximately $7,000 was paid to J. E. Rahal in checks and charged to him, on the books. From June 4, 1943 to July 6, 1943, petitioner paid to Economy Produce Company checks totaling $7,010.85. Of these checks, all except $856.60 were dated in June 1943. Another check of $115 dated July 8, 1943, was paid Hyman Cohan, who had some connection with Economy Produce Company. On January 5, 1944, $336.77 was paid Phillips Lithographing Company in payment of the $359.82 item, after adjustment of $15.85 for overpayment *338 on an old account. A bill marked paid is dated January 3, 1944, but refers to the $359.82 as "Nov. 8" - without reference to year. A statement, under date of October 28, 1942, from Phillips Lithographing Company to petitioner lists items, totaling $359.82, under dates of April 5, 1940 and February 20, 1940. The reference to F. E. Rahal opposite the $5,000 brokerage item (in the $36,422.05 list above) is error for F.L. or Fred L. Rahal, son of J. E. Rahal. The $5,000 was agreed upon by the two as commission for sales, but was never paid. F. L. Rahal released the petitioner in 1945 or 1946, by agreement with his father. The revenue agent who investigated the case, from the general ledger of petitioner, copied the accounts payable control account beginning with $30,425 balance on June 1, 1943, and ending with a balance of $26,300.99 August 31, 1946. The debits in June 1943 were $2,787.70, with no credits. No $5,000 item appears thereon. He also made up from petitioner's journals and cash disbursement books an analysis or schedule, checking debits against credits, from the entries posted to the control account from June 1, 1943 to August 15, 1946. The only item therein with reference *339 to Economy Produce Company is $776 under date of May 31, 1944, under credits and accruals and under debits and payments; and under date of June 4, 1943, under debits and payments, $378.20, which corresponds to a check for $378.20 included in the $7,010.85 above recited. No item appears with reference to F.L. or Fred L. Rahal or J. E. Rahal, and the only item referring to Phillips Lithographing Company is an accrual of $15.85 under date of January 5, 1944. The revenue agent also made up from petitioner's records a detailed statement of the entries posted to the accounts payable control. This shows, out of the above items making up the $36,422.05, only the following: Joseph E. Rahal
$5,997.05 - June 1943
Economy Produce Co.
378.20 - June 4, 1943
Phillips Lithograph-
ing Co.
15.85 - Jan. 5, 1944
Economy Produce Co.
776.00 - May 31, 1944 and
June 5, 1944 No item appears as to F.L. or Fred L. Rahal, and the only items relating to brokerage total $2,990.67. Opinion The first question for examination is whether the statute of limitations has run. The burden is on the respondent in this respect. More than three years, but less than five years, intervened between *340 the filing of petitioner's income and declared value excess profits return on October 15, 1943, and the mailing of the deficiency notice on June 9, 1948. The petitioner relies on section 275 (a) of the Internal Revenue Code for a three-year limitation and respondent on section 275 (c) for a five-year period. The latter provides that the period is five years if the taxpayer omits from gross income in excess of 25 per cent of the "amount of gross income stated in the return." Here the petitioner reported gross income of $30,417.19 and the respondent contends that by improperly including in cost of goods sold $26,300.99, by including that amount in accounts payable for the taxable year, when in fact there were no such accounts payable, more than 25 per cent of $30,417.19 was omitted from gross income. Though on brief petitioner expresses doubt as to definition of "stated in the return" we have none. The statute means what it says. If a certain amount is shown in the return as gross income, it is stated in the return, within the statute. Gross income does not mean gross receipts. W. F. Trimble & Sons Co., 1 T.C. 482. Cost of goods must be subtracted *341 from gross receipts to determine gross income. Lela Sullenger, 11 T.C. 1076. Here the petitioner increased cost of goods by certain accounts payable. To that extent, therefore, cost of goods was increased and gross income decreased, that is, omitted. If the accounts payable were non-existent, the result was omission from gross income as stated in the return. On the whole record before us, there is no doubt that there were included, to the extent of more than 25 per cent of the $30,417.19 gross income stated in the return, items of accounts payable which did not exist. The petitioner had no record of accounts payable. The accountant-attorney who made up the return merely set down accounts payable to the extent of at least $19,253.75 on the oral authorization of petitioner's president-manager, J. E. Rahal, and not from the books. The accountant-attorney did not know whether the petitioner then had books. Items in the above amount never appear in the accounts payable control. We omit, in arriving at the above total, $359.82, because record thereof does appear. Though checks to Economy Produce Company, which is involved as to two items of the alleged accounts payable, were *342 placed in evidence to prove the payment of the accounts payable, they are, upon analysis of the accounts payable control records, shown not there to appear. Nor do the items of salary, brokerage or other liability to either J. E. Rahal or his son so appear. We hold that gross income was omitted from the return to the extent of more than 25 per cent of gross income stated in the return, that the five-year statute of limitation applies, that it had not expired at the time the deficiency notice was mailed, and therefore had not expired. The next question is whether there was, in the matter of the accounts payable, deficiency due to fraud with intent to evade tax within section 293 (b) of the Internal Revenue Code, so that the 50 per cent addition to tax thereby provided should be applied. Again the burden is on the respondent. We can, upon the facts before us, come to no conclusion other than that there was such fraud. The lack of ledger or other record to show accounts payable, the use nevertheless of such accounts in computation of income to increase cost of goods sold to the extent of thousands of dollars, merely at the behest of the president-manager, and *343 the failure of such items to appear later in the accounts payable control records, as paid or otherwise disposed of, are altogether convincing that intent to evade tax was the intent. The withholding of the books from the revenue agent until after deficiency was determined, the absence of any explanation of records by any bookkeeper who kept them, the production of checks and statements made in an attempt to demonstrate accounts payable, which were flatly contradicted by the detailed examination of the books later produced, are completely convincing. We conclude and hold that a part of the deficiencies involved were due to fraud with intent to evade tax, and that the 50 per cent addition to tax is proper. There remains for consideration the question whether the petitioner is liable for a 25 per cent penalty for failure to file an excess profits tax return. That it did not do so is admitted in a reply. The petition sets up no assignment of error in this regard, nor does the amendment to petition, but the reply states that "No Excess Profits Tax Return was required for the year involved." The issue was not discussed at trial and petitioner's brief makes no mention of it, except to *344 state that the respondent erred in alleging the delinquency penalty for not filing excess profits tax return, for the reason that sufficient income did not exist to require the filing of such return. No attempt was made to show other reason for failure to file, nor facts showing that no return was due. No exemption is set up. The delinquency penalty, $4,682.80, was set up in the deficiency notice in detail. The matter was not argued. We see on the record before us no reason why the return should not have been filed; and we approve the 25 per cent penalty determined, under section 291, Internal Revenue Code. Decision will be entered for the respondent.