# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

———————

No. 96-2154

———————

| | |
|---|---|
| John P. Broadaway; Teena G. Broadaway, | * |
| | * |
| Appellants, | * |
| | *   Appeals from the |
| v. | *   United States Tax Court |
| | * |
| Commissioner of Internal Revenue, | * |
| | * |
| | * |
| Appellee. | * |

———————

No. 96-2155

———————

| | |
|---|---|
| John M. Cameron; Caroline D. Cameron, | * |
| | * |
| | * |
| Appellants, | * |
| | * |
| v. | * |
| | * |
| Commissioner of Internal Revenue, | * |
| | * |
| | * |
| Appellee. | * |

———————

Submitted: January 16, 1997

Filed: April 16, 1997

———————

Before BOWMAN and MURPHY, Circuit Judges, and KYLE,[1] District
Judge.

BOWMAN, Circuit Judge.

John P. and Teena G. Broadaway and John M. and Caroline D. Cameron
appeal from a final decision of the Tax Court[2] upholding the Commissioner's
assessment of tax deficiencies based on dividend distributions from Cameron
Construction Company made to the Broadaways and the Camerons during the
1989 tax year.  We affirm.

I.

This case was submitted to the Tax Court on the basis of a fully
stipulated record that provides the following salient facts.  The
Broadaways and the Camerons are shareholders in Cameron Construction
Company (the Company) which operated and paid taxes as a Subchapter C
corporation, see I.R.C. §§ 301-385 (1988),[3] until October 31, 1988.  The
Company has at all times been engaged in the road and highway construction
business and has at all times calculated its taxable income from long-term

---

[1]The Honorable Richard H. Kyle, United States District Judge
for the District of Minnesota, sitting by designation.

[2]The Honorable David Laro, Judge, United States Tax Court.

[3]Unless otherwise indicated, all references to the Internal
Revenue Code are to the 1988 edition of Title 26 of the United
States Code, as amended effective through December 31, 1989,
which is applicable to the tax years in dispute.  We have
disregarded amendments effective after December 31, 1989.

construction contracts using the completed contract method of accounting.[4]
While

---

[4]Under the completed contract method, the total income from a contract is recognized, and the total costs of performance are deducted, in the taxable year in which the contract is completed. See Treas. Reg. § 1.451-3(d)(1) (as amended in 1985). While income from most long-term construction contracts must be reported using the percentage of completion method, see I.R.C. § 460(a), (b) (Supp. I 1989), the Code provides an exception for construction contracts estimated to be completed within two years. This exception applies only to taxpayers whose average annual gross receipts for the three preceding taxable years do not exceed ten million dollars. See I.R.C. § 460(e)(1)(B).

operating as a C corporation, the Company was required to maintain an earnings and profits account from which distributions to Company shareholders--including the Broadaways and the Camerons--would be taxed as dividends. See I.R.C. § 316(a). For purposes of determining earnings and profits, the parties agree that the Company, even though it calculated its taxable income under the completed contract method of accounting, was required under I.R.C. § 312(n)(6) to account for its long-term construction contracts under the percentage of completion method of accounting.[5]

The dispute in this case flows from the Company's election pursuant to I.R.C. § 1362(a) to switch from Subchapter C status and to be taxed as a Subchapter S corporation, see I.R.C. §§ 1361-1379, effective upon the close of the Company's taxable year ended October 31, 1988. Under Subchapter S, the Company does not pay corporate-level income taxes. Instead, the Company's income is taxed directly to its shareholders based on their ownership of

---

[5]The percentage of completion method of accounting requires that the Company account for income from long-term contracts each taxable year as the work progresses. The amount of income accrued for each taxable year is that proportion of the expected total contract income that the amount of costs incurred through the end of the taxable year bears to the total expected costs, reduced by cumulative amounts of contract income that were reported for previous years. See I.R.C. § 460(b) (Supp. I 1989); Berger Eng'g Co. v. Commissioner, 20 T.C.M. (CCH) 1518, 1522 (1961) ("The object of the percentage of completion method is to provide a means of reporting income in a steady flow as work on the contract advances toward completion.").

corporate stock--whether or not the funds are actually distributed to the shareholders.[6] Instead of maintaining an earnings and profits account, an S corporation monitors its undistributed corporate earnings, those that have been taxed to the shareholders but not yet distributed, using an accumulated adjustments account from which distributions to shareholders are generally tax-free.[7] See I.R.C. § 1368(c)(1). The parties agreed in their jointly filed stipulation of facts that the Company remained obligated to account for its earnings and profits in 1989 under the percentage of completion method of accounting, despite the Company's election to switch to Subchapter S status. A number of long-term construction contracts begun while the Company was a C corporation were completed after it became an S corporation.

From November 1, 1988 through December 31, 1989, the Company incurred costs on long-term contracts begun while it was a C corporation that exceeded the reasonable estimates the Company had used under the percentage of completion method of accounting to calculate earnings and profits for its last taxable year as a C corporation.[8] As a result of the disparity between the Company's

---

[6]For S corporations with no carried-over earnings and profits, any distribution to a shareholder is treated first as a nontaxable return of capital to the extent of the shareholder's stock basis, and second, to the extent the distribution exceeds the shareholder's stock basis, as a capital gain. See I.R.C. § 1368(b).

[7]The accumulated adjustments account is a corporate level account that begins with a zero balance and is adjusted to reflect the net earnings of the corporation. The account is adjusted upward by the amount of the corporation's income and is decreased by the amount of any losses and by return-of-capital distributions to shareholders. See I.R.C. § 1368(e)(1)(A).

[8]As a C corporation, the Company computed its taxable income based on a fiscal year ending October 31. As an S corporation, the Company was required to compute its taxable income on a calendar year basis. See I.R.C. § 1378. The Company's first tax year as an S corporation was a short year beginning on November 1, 1988 and ending on December 31, 1988. See id.

reasonable cost estimates and its actual costs to complete these long-term contracts, the taxpayers argue that the accumulated earnings and profits account carried over from the Company's existence as a C corporation[9] reflects an artificially high balance. This artificially high earnings and profits balance, they contend, ultimately resulted in the Commissioner's improper characterization of a $300,000 distribution to the taxpayers as a taxable dividend to the extent of the balance in the Company's carried-over earnings and profits account. The parties stipulate that the balance in the Company's earnings and profits account as of October 31, 1988--the end of the Company's last year as a C corporation--was $251,650.13. The taxpayers argue that the Company should be allowed to adjust this amount by retroactively revising the reasonable cost estimates that it used to calculate earnings and profits on long-term contracts in progress on October 31, 1988 to reflect the actual, higher costs eventually incurred during its 1989 tax year.

The Tax Court rejected the taxpayers' arguments and concluded that for purposes of calculating the taxable amount of the dividend distribution, the Company's earnings and profits for its last year as a C corporation must be computed on the basis of estimates of the total costs of its long-term contracts made on October 31, 1988

---

[9]An S corporation will have an earnings and profits account derived only from one or more of the following sources: (1) its prior existence as a C corporation, (2) earnings prior to 1983, when earnings and profits concepts were still applicable to S corporations; or (3) the acquisition of another C corporation with an earnings and profits account balance. See Boris I. Bittker & James J. Eustice, Federal Income Taxation of Corporations and Shareholders ¶ 6.08[1] (6th ed. 1994).

without retroactive adjustment to reflect actual, higher costs incurred during the 1989 tax year. Accordingly, the court upheld the tax deficiencies assessed by the Commissioner. The taxpayers appeal the Tax Court's decision.

II.

We have jurisdiction over appeals from final decisions of the Tax Court, see I.R.C. § 7482(a) (1994), and we review the legal conclusions of the Tax Court de novo. See Chakales v. Commissioner, 79 F.3d 726, 728 (8th Cir.), cert. denied, 117 S. Ct. 85 (1996). The taxpayers make several arguments to support their claim that the Tax Court erroneously concluded that the Company could not adjust its carried-over earnings and profits account to reflect events occurring after the Company became an S corporation. We agree with the Tax Court that the Internal Revenue Code does not permit such adjustments to be made.

Under I.R.C. § 1371(c)(1), with limited exceptions, "no adjustment shall be made to the earnings and profits of an S corporation." This provision effectively suspends activity related to the earnings and profits account, and the account balance carried over to an S corporation from its previous existence as a C corporation remains unchanged from year to year unless one of a limited number of specific events occur that warrant adjustment to the account. The carried-over earnings and profits account can be decreased under the Code only to reflect (1) dividend distributions to shareholders to the extent made out of accumulated earnings and profits, see I.R.C. §§ 1371(c)(3), 1368(c)(2); (2) distributions resulting from redemptions, liquidations, reorganizations, or

divisives,[10] see I.R.C. § 1371(c)(2); and (3) tax paid by an S corporation as a result of recapture of investment credit taken when the corporation was a C corporation, see I.R.C. § 1371(d)(3).  In addition, the earnings and profits account can be increased if the S corporation acquires another corporation with an earnings and profits account balance.  See I.R.C. § 381(c)(2) (1988 & Supp. I 1989).

None of the triggering events that would permit the Company to reduce its earnings and profits account balance occurred from October 31, 1988 through December 31, 1989.  As a result, the Company's October 31, 1988 earnings and profits account balance of $251,650.13 remained unchanged until the Company depleted the account by making the $300,000 dividend distribution to the taxpayers in 1989.  See I.R.C. §§ 1371(c)(3); 1368(c)(2).

The taxpayers argue that the language of I.R.C. § 1371(c)(2) supports their position.  This subsection provides that "[i]n the case of any transaction involving the application of subchapter C to any S corporation, proper adjustment to any accumulated earnings and profits of the corporation shall be made."  However, the title of this subsection, "**Adjustments for redemptions, liquidations, reorganizations, divisives, etc.**," belies this argument and specifically limits this exception to the enumerated situations where an S corporation undergoes fundamental changes that would likely require adjustments to an accumulated earnings and profits account.  The plain language of § 1371(c)(2), coupled with the general rule of § 1371(c)(1), precludes adjustments to the

---

[10]The term "divisives" has not been defined under the Internal Revenue Code.  It presumably refers to corporate separations such as spin-offs, split-offs, and split-ups.  See Boris I. Bittker and James J. Eustice, Federal Income Taxation of Corporations and Shareholders ¶ 6.08 (6th ed. 1994).

accumulated earnings and profits account of an S corporation except in the specific instances enumerated. An adjustment to the accumulated earnings and profits account of an S corporation to rectify ultimately inaccurate estimates of the costs necessary to complete long-term construction contracts is not the sort of "transaction involving the application of subchapter C" to which I.R.C. § 1371(c)(2) applies.

The taxpayers argue that compliance with I.R.C. § 312(n)(6) (1988 & Supp. I 1989), which requires computation of the Company's earnings and profits using the percentage of completion method of accounting, necessitates adjustment to the earnings and profits account to reflect the reasonable cost estimates to complete long-term contracts as yet uncompleted at the close of tax year 1989. This argument is without merit. Once the Company elected to switch from Subchapter C to Subchapter S treatment, the Company was required to track its earnings using an accumulated adjustments account rather than the earnings and profits account utilized while the Company was a C corporation. See I.R.C. § 1368(e)(1)(A). When the Company incurred costs during 1989 that exceeded its reasonable estimates of these costs as of October 31, 1988, these additional costs were attributable to the Company's operations as an S corporation and, by virtue of I.R.C. § 1371(c)(1), cannot be used to adjust the Company's carried-over earnings and profits account.

The taxpayers further argue that, as a matter of fairness, the Company should be allowed to revise retroactively the cost estimates used on October 31, 1988 to calculate earnings and profits for the Company's final year as a C corporation to reflect more accurately the higher costs actually incurred during 1989 to complete the contracts. This argument is not unattractive, but given the terms of the governing Code provisions, which we already have discussed at some length, it cannot prevail. Once the

Company elected to be taxed under Subchapter S, the taxpayers thereafter were prevented from taking advantage of the adjustments to earnings and profits normally available under Subchapter C. Consequently, there can be no reduction in the taxable portion of the dividend distribution made in 1989. The earnings and profits account balance calculated on October 31, 1988, the close of the Company's last year as a C corporation, was based on contemporaneous, reasonable estimates of costs to complete long-term contracts that cannot be recomputed retroactively after the Company has become an S corporation to account for unforeseen increases in actual costs. This no-retroactive-recomputation rule is plainly established in the applicable statutory provisions, and represents a burden the taxpayers necessarily assumed in order to gain the benefits of being taxed as an S corporation instead of as a C corporation.

V.

For the foregoing reasons, the decision of the Tax Court is affirmed.

A true copy.


Attest:



CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT

-10-