115 T.C. No. 1


UNITED STATES TAX COURT


TUTOR-SALIBA CORPORATION, A CALIFORNIA CORPORATION, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 3110-98.                          Filed July 17, 2000.


        Under the Tax Reform Act of 1986, Pub. L. 99-514,
100 Stat. 2085, Congress changed the reporting method
for long-term contracts from the completed contract
method to the percentage of completion method.  Under
the percentage of completion method of sec. 460(b),
I.R.C., taxpayers are required to include in income
during the years of construction a portion of the
"estimated contract price."  In promulgating sec.
1.460-6(c)(2)(vi), Income Tax Regs., the Secretary
concluded that the term "estimated contract price"
includes amounts related to contingent rights and
obligations, regardless of whether the "all events
test" has been met.  R, relying on the plain meaning of
the statute and its legislative history, contends that
the regulation is a valid interpretation of the statute
that satisfies congressional intent.  P contends that
the all events test is a fundamental tax principle that
cannot be ignored without an express mandate from
Congress.

**Held**: Sec. 1.460-6(c)(2)(vi), Income Tax Regs., is a reasonable interpretation of the statute, comports with the legislative history, and, accordingly, is valid.

Marilyn Barrett, for petitioner.

Steven M. Roth and Jonathan H. Sloat, for respondent.

OPINION

GERBER, Judge: Pursuant to Rule 121,[1] this matter is before the Court on petitioner's motion for partial summary judgment. The parties seek to determine, as a matter of law, whether section 1.460-6(c)(2)(vi)(A) and (B), Income Tax Regs., is invalid to the extent it contains no requirement that disputed long-term contract claims meet the "all events test" to be includable in the estimated contract price within the context of section 460.

Summary judgment may be granted if the pleadings and other materials demonstrate that no genuine issue exists as to any material fact and that a decision may be entered as a matter of law. See Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994). There is no genuine issue as to any material fact with respect to the

---

[1] Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code in effect for the taxable years at issue.

specific legal issue before us, and, accordingly, this matter is ripe for judgment on the contested issue as a matter of law.  See Rule 121(b).

## Background

Petitioner was organized pursuant to the laws of the State of California on June 15, 1981.  At the time its petition was filed, petitioner's principal place of business was in Sylmar, California.

Petitioner is a general contractor in the construction industry for public works projects, including highways and government-owned buildings, and large-scale private developments, such as office towers.  Petitioner enters into contracts either on a fixed price basis or on a cost-plus basis.  All of the contracts in issue in this case are fixed price contracts.  In a fixed price contract, contractors formulate their bids on the basis of the information contained in the architectural and engineering drawings, designs, and geological reports provided by the contracting agency.  Due to changes in drawings or designs, customer-caused delays, errors in the specifications of the drawings, designs, or reports, or other unanticipated delays, additional work by the contractor is commonly required to complete the job satisfactorily.

The contracts in question obligate petitioner to complete the job, and if it failed to do so, petitioner would be liable to

the government agency that is a party thereto (contracting party) for damages. Each of the contracts provided for liquidated damages in the event petitioner failed to complete the job or did not otherwise fulfill its contractual obligations. The contracts also provided for a retention of a specified percentage of the contract price until the contracting party completed review of the job and accepted it as completed. Petitioner submitted certain change orders on the contracts in question that were denied by the other contracting party. Petitioner followed the required procedures for submitting claims and for appealing adverse determinations on disputed claims.

For Federal income tax purposes, petitioner was subject to section 460 for the reporting of income from long-term contracts. While petitioner reported income from its long-term contracts under the percentage of completion method, it employed the all-events test to govern income recognition from disputed claims. Thus, petitioner did not include income from disputed claims when estimating the total contract price under the percentage of completion method, but petitioner instead reported as income only the portion of disputed claims actually awarded to petitioner in the taxable year in which either a settlement was entered into, an arbitration award was determined, or a court rendered judgment.

Respondent contends that the income from the disputed claims should be included in the total contract price as required by section 1.460-6(c)(2)(vi), Income Tax Regs. Petitioner contends that disputed claims should, as a matter of law, be reported in accord with the all events test and included in income in the taxable year in which income from the disputed claim is ultimately awarded. Petitioner contends that, to the extent the all events test has not been employed, section 1.460-6(c)(2)(vi), Income Tax Regs., is invalid.

## Discussion

Section 460 contains special rules for long-term contracts and generally requires the use of the percentage of completion method for tax reporting. To the extent that a taxpayer underestimates the percentage completed or the amount includable in income, section 460(b) provides for "look-back" interest to be paid by the taxpayer.[2]

---

[2] Sec. 460(b) provides:

(2) Look-back method.--The interest computed under the look-back method of this paragraph shall be determined by--

  (A) first allocating income under the contract among taxable years before the year in which the contract is completed on the basis of the actual contract price and costs instead of the estimated contract price and costs,

  (B) second, determining (solely for purposes of computing such interest) the overpayment or

(continued...)

Section 460 was enacted by the Tax Reform Act of 1986, Pub. L. 99-514, sec. 804(a), 100 Stat. 2385. Prior to 1986, income from long-term contracts could be accounted for under one of two alternative methods: the percentage of completion method or the completed contract method. Under the percentage of completion method, income was recognized according to the percentage of the contract completed during each taxable year. The determination of the portion of the contract completed during the taxable year could be made either by (1) comparing the costs incurred during the year to the total estimated costs to be incurred under the contract, or (2) comparing the work performed during the year with the estimated total work to be performed. See sec. 1.451-3(c)(2)(i) and (ii), Income Tax Regs.

---

[2](...continued)
underpayment of tax for each taxable year referred to in subparagraph (A) which would result solely from the application of subparagraph (A), and

    (C) then using the overpayment rate established by section 6621, compounded daily, on the overpayment or underpayment determined under subparagraph (B).

For purposes of the preceding sentence, any amount properly taken into account after completion of the contract shall be taken into account by discounting (using the Federal mid-term rate determined under section 1274(d) as of the time is so properly taken into account) such amount to its value as of the completion of the contract. The taxpayer may elect with respect to any contract to have the preceding sentence not apply to such contract.

Under the completed contract method, the entire gross contract price was included in income in the taxable year in which the contract was finally completed and accepted. All costs properly allocated to a long-term contract were deducted in the year of completion. See sec. 1.451-3(d), Income Tax Regs. Regulations under the completed contract method provided that any disputed item of income which was properly allocable to a long-term contract and which was not included in gross income in a prior taxable year should be included in gross income in the taxable year in which any such dispute is resolved. See sec. 1.451-3(d)(3), Income Tax Regs.

Section 460, enacted in 1986, as applicable to long-term contracts entered into after February 28, 1986, required taxpayers to compute income under either the "percentage of completion capitalized cost method" or the percentage of completion method. Under the percentage of completion capitalized cost method, taxpayers were required to report 40 percent of the contract items under the percentage of completion method of accounting and were permitted to report the remaining 60 percent of the contract items under their normal method of accounting. The proportion of contract items required to be reported under the percentage of completion method was subsequently increased several times. Ultimately, by the enactment of the Omnibus Budget Reconciliation Act of 1989, Pub.

L. 101-239, 103 Stat. 2106, 100 percent of contract items for long-term contracts entered into on or after July 11, 1989, had to be reported under the percentage of completion method.

Under the percentage of completion method of accounting, income from the contract must be reported over the life of the contract, and expenses must be deducted in the year incurred. The reportable income for each year is calculated as follows: the total contract costs incurred through the end of the tax year are divided by the total estimated contract costs, and then multiplied by the total contract price; the product of this multiplication is reduced by gross income from the contract reported for prior years. See sec. 460; Cameron v. Commissioner, 105 T.C. 380 (1995), affd. sub nom. Broadway v. Commissioner, 111 F.3d 593 (6th Cir. 1997).

Under section 460(b), a taxpayer is required to apply the "look-back method" upon a contract's completion (and possibly again after a postcompletion event) to compensate the prejudiced party (taxpayer or Government) for a taxpayer's overestimation or underestimation in applying the percentage of the completion method. Under this method, the taxpayer recomputes its income tax (theoretically--since, in reality, taxpayers do not amend any tax returns) for each year of the contract using the actual contract price and costs instead of estimates. Based on this reconciliation, the taxpayer pays interest to the Government on

any hypothetical underpayments of tax and receives interest from the Government on any hypothetical overpayments of tax.

If an amount of revenue or cost attributable to a completed long-term contract is properly taken into account in a postcompletion year, section 460(b)(1)(B) requires a taxpayer to reapply the look-back method in that postcompletion year unless the taxpayer elects otherwise.  For this purpose, section 460(b)(2) requires a taxpayer to discount the amount of revenue or cost to its present value as of the contract's completion date and to redetermine the contract's "actual contract price".

Promulgated in October 1990, section 1.460-6(c)(2)(vi), Income Tax Regs., 55 Fed. Reg. 41665-01 (Oct. 15, 1990), provides:

> (vi) Amount treated as contract price--(A) General rule.  The amount that is treated as total contract price for purposes of applying the percentage of completion method and reapplying the percentage of completion method under the look-back method under Step One includes all amounts that the taxpayer expects to receive from the customer.  Thus, amounts are treated as part of the contract price as soon as it is reasonably estimated that they will be received, even if the all-events test has not yet been met.
>
> (B) Contingencies.  Any amounts related to contingent rights or obligations, such as incentive fees or amounts in dispute, are not separated from the contract and accounted for under a non-long-term contract method of accounting, notwithstanding any provision in § 1.451-3(b)(2)(ii), (iii), (iv), and § 1.451-3(d)(2), (3), and (4), to the contrary.  Instead, those amounts are treated as part of the total contract price in applying the percentage of completion method and the look-back method.  For example, if an incentive fee under a contract to manufacture a satellite is

> payable to the taxpayer after a specified period of successful performance, the incentive fee is includible in the total contract price at the time and to the extent that it can reasonably be predicted that the performance objectives will be met, for purposes of both the percentage of completion method and the look-back method. Similarly, a portion of the contract price that is in dispute is included in the total contract price at the time and to the extent that the taxpayer can reasonably expect the dispute will be resolved in the taxpayer's favor (without regard to when the taxpayer receives payment for the amount in dispute or when the dispute is finally resolved).

Sec. 1.460-6(c)(2)(vi)(A) and (B), Income Tax Regs. Thus, under the regulation, the total contract price used in the percentage of completion calculation includes any amounts attributable to contingent rights or obligations.

Petitioner argues that (i) the regulation does not implement the congressional mandate as required under applicable law; (ii) the regulation attempts to "repeal", without clear and explicit congressional support, the all events test, which has been recognized as a fundamental tax principle; (iii) respondent attempts to usurp Congress and supersede the look-back method by issuance of the regulation to address timing differences; and (iv) the regulation is not reasonable in view of prior law and usage and is not reasonable in application.[3] Respondent argues that it is reasonable to require a taxpayer to estimate the total contract price of a long-term contract and, thus, to include a

---

[3] Petitioner is not arguing that income arising out of contingencies and disputes be excluded from the look-back method.

disputed claim related to that contract as soon as it is reasonably estimated that income from the claim will be received. Respondent maintains that the regulation's inclusion of disputed claims in the percentage of completion method satisfies congressional intent and is therefore valid.

Validity of Sec. 1.460-6(c)(2)(vi), Income Tax Regs.

A. Standard of Review

Regulations are either legislative or interpretive in character. See Estate of Pullin v. Commissioner, 84 T.C. 789, 795 (1985). An interpretive regulation is issued under the general authority vested in the Secretary by section 7805, whereas a legislative regulation is issued pursuant to a specific congressional delegation to the Secretary. Section 1.460-6(c)(2)(vi), Income Tax Regs., appears to be issued under the regulatory authority of section 460(h). Respondent, however, conceded that this regulation is interpretive. Accordingly, we need not determine whether this regulation is legislative or interpretive in nature. We note, however, that our holding would be the same regardless of whether we use the standard employed for legislative or interpretive regulations.

An interpretive regulation, while entitled to deference, is not entitled to as much deference as is accorded a legislative regulation. See United States v. Vogel Fertilizer Co., 455 U.S. 16, 24 (1982). Moreover, the standard of deference accorded to

an interpretive regulation sets only "the framework for judicial analysis; it does not displace it." United States v. Cartwright, 411 U.S. 546, 550 (1973). Under the traditional standard of review, interpretive regulations are to be found valid if they "'implement the congressional mandate in some reasonable manner'". National Muffler Dealers Association, Inc. v. United States, 440 U.S. 472, 476 (1979) (quoting United States v. Correll, 389 U.S. 299, 307 (1967)).

A regulation may not contradict the unambiguous language of a statute. See Citizen's Natl. Bank v. United States, 417 F.2d 675 (5th Cir. 1969); Hefti v. Commissioner, 97 T.C. 180, 189 (1991), affd. 983 F.2d 868 (8th Cir. 1993). Unless an interpretive regulation is unreasonable and plainly inconsistent with the statute, it should be sustained. See Bingler v. Johnson, 394 U.S. 741, 750 (1969). However, even if a regulation does not directly contradict the language of the statute it purports to interpret, the regulation may still be invalid if it is fundamentally at odds with or inconsistent with the statute's origin and purpose.[4] See United States v. Vogel Fertilizer Co.,

---

[4] We are mindful that the choice among reasonable statutory interpretations is for the executive branch of Government and not the courts. See National Muffler Dealers Association, Inc. v. United States, 440 U.S. 472, 488 (1979). The issue is whether the Secretary's interpretation of the statute is a reasonable one, not whether it is the best or only one. See Brown v. United States, 890 F.2d 1329, 1338 (5th Cir. 1989). When the regulation implements in some reasonable manner the congressional intent
(continued...)

supra at 26; CWT Farms, Inc. v. Commissioner, 79 T.C. 1054, 1062 (1982), affd. 755 F.2d 790 (11th Cir. 1985).

B. Analysis

Under the test articulated in Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984), the first question we must ask when reviewing an agency's interpretation of a statute is whether Congress has addressed the precise question under consideration and has expressed its intent as to its resolution. The examination should begin with the language of the statute. See Consumer Prod. Safety Commn. v. GTE Sylvania, Inc., 447 U.S. 102, 108 (1980); Abourezk v. Reagan, 785 F.2d 1043, 1053 (D.C. Cir. 1986).

In deciding whether the regulation comports with the statute's plain language, we look to the ordinary usage or settled meanings of the words used in the statute by Congress. See Lynch v. Alworth-Stephens Co., 267 U.S. 364, 370 (1925). There is a strong presumption that Congress expresses its intention through the language it chooses. See INS v. Cardoza-Fonseca, 480 U.S. 421, 432 n.12 (1987). Section 460 contains the

---

[4](...continued)
underlying a provision, courts are not at liberty to strike down the regulation merely because the taxpayer offers a more attractive statutory interpretation. See id.

phrase "estimated contract price".[5]  This language indicates that Congress was aware of the fact that taxpayers were being required to estimate when using the percentage of completion method in accounting for long-term contracts.  The fact that section 460(b)(2)(A) requires a taxpayer to substitute "actual contract price and costs" for "estimated contract price and costs" when applying the look-back method at the contract's completion underscores the fact that the total contract price used in the percentage of completion method calculation is an estimate of the total contract price and is likely to change during the performance of the contract.  This conceptual underpinning is the antithesis of the all events test.[6]

The term "estimated" does not necessarily include, as respondent contends, revenues from disputed claims.  The term "estimate," however, does not preclude the possibility that Congress intended that disputed claims be included.  In any

---

[5] The parties do not dispute the definition of the term "estimated".  According to the dictionary, "estimate" means to judge tentatively or approximately the value, worth or significance of; to determine roughly the size, extent, or nature of; or to produce a statement of the approximate cost of.  See Merriam-Webster's Tenth Collegiate Dictionary 397 (1997).

[6] Furthermore, in a number of tax accounting cases, the Supreme Court has decided that estimates of anticipated expenses are not accruable as deductions under the all events test.  See United States v. General Dynamics Corp., 481 U.S. 239, 243-244 (1987).  The repeated use of the word "estimated" indicates that standard principles of accrual accounting, including the all events test, are not determinative.

event, there is nothing in the regulation that contradicts the plain language of the statute.

As stated above, even if a regulation does not clearly contradict the language of the statute it purports to interpret, the regulation may still be invalid if it is fundamentally at odds with or inconsistent with the statute's origin and purpose. See United States v. Vogel Fertilizer Co., supra at 26; CWT Farms, Inc. v. Commissioner, supra at 1062.  Because the use of the word "estimated", alone, does not reveal the congressional intent, we must determine whether the regulation harmonizes with and implements the congressional mandate in some reasonable manner.

There is no doubt about Congress' concern that the completed contract method of accounting for long-term contracts permitted an unwarranted deferral of the income from those contracts.  See S. Rept. 99-313 (1986), 1986-3 C.B. (Vol. 3) 140; Staff of the Joint Comm. on Taxation, General Explanation of the Tax Reform Act of 1986, at 527 (J. Comm. Print 1987).  Congress sought to limit the tax deferral obtainable through use of the completed contract method by requiring taxpayers to report income from long-term contracts on a percentage of completion method.  It was recognized that use of the percentage of completion method could produce harsh results for taxpayers where an overall loss was experienced or where actual profits were significantly less than

projected.  Thus, Congress provided for a "look-back" to account for variances between the estimated and the actual figures.

Although there is no specific support in the legislative history for respondent's position, use of the terms "expected" and "anticipated" lends support to respondent's position and is helpful to our consideration.  The House report described the intended operation of the percentage of completion method as follows:

> Income from all long-term contracts must be reported under the percentage of completion method based on the expected costs rather than physical completion.  Thus, the amount of gross income from a long-term contract recognized in a particular taxable year generally is that proportion of the expected contract price that the amount of costs incurred through the end of the taxable year bears to the total expected costs, reduced by amounts of gross contract price that were included in gross income in previous taxable years.  [H. Rept. 99-426 (1986), 1986-3 C.B. (Vol. 2) 630; emphasis added.]

In describing the operation of the look-back method, the Staff of the Joint Committee on Taxation added:

> In the taxable year in which the contract is completed, a determination is made whether the taxes paid with respect to the contract in each year of the contract were more or less than the amount that would have been paid if the actual gross contract price and the actual total contract costs, rather than the anticipated contract price and costs, had been used to compute gross income. [Staff of Joint Comm. on Taxation, General Explanation of the Tax Reform Act of 1986, at 528 (J. Comm. Print 1987); emphasis added.]
> * * *

While it is clear that Congress intended the total contract price to be computed by means of an estimate, the legislative history contains no reference to disputed or contingent items. Furthermore, there is no explicit indication as to whether the all events test applies. There is a reference to contingent items in the General Explanation of the Tax Reform Act of 1986, which contains the statement that "For purposes of the 'look-back' method, the contract price shall reflect all amounts received under the contract, including amounts received after the contract completion date as a result of disputes, litigation or settlements relating to the contract."[7] Id.

Because disputed claims are includable in the look-back computation, an earlier inclusion of disputed claims will result in smaller underpayments and interest. Thus, requiring taxpayers to treat disputed claims as part of the contract price as soon as it is reasonably estimated that they will be received harmonizes with the statute's overall purpose, as reflected by its

---

[7] While the General Explanation of the Tax Reform Act of 1986 does not rise to the level of legislative history because it is prepared by congressional staff after enactment of the statute, it has been considered highly indicative of what Congress did, in fact, intend and we take it into consideration. See Staff of Joint Comm. on Taxation, General Explanation of the Tas Reform Act of 1986 (J. Comm. Print 1987); Estate of Wallace v. Commissioner, 965 F.2d 1038, 1050-1051 n.15 (11th Cir. 1992); FPC v. Memphis Light, Gas & Water Div., 411 U.S. 458, 472 (1973) (indicating that the General Explanation of the Tax Reform Act is a probative contemporary indication of the effect of a statutory provision).

legislative history.  Based on indications in the legislative
history that Congress was concerned with taxpayer deferral of
income, a regulation requiring all revenues to be reasonably
estimated and included in the total contract price comports with
that congressional intent.[8]

Petitioner makes several contrary arguments.  First, it
contends that implicit in the enactment of the look-back method
is congressional approval of the all events test.  The all events
test, which was developed as case law and embodied in
regulations, applies to accrual method taxpayers and is used in
determining the taxable year in which items of income or
deductions are properly reported by such taxpayers.  Under
section 1.451-1(a), Income Tax Regs., income is includable in
gross income when all the events have occurred which fix the
right to receive such income and the amount thereof can be
determined with reasonable accuracy.  Under the all events test,
disputed claims to income are not accruable until a settlement is

---

[8] We also note that the regulation has been in existence
without relevant change since its promulgation in 1990, and
during its existence Congress has amended section 460 without
amending section 460(b) to alter the regulation's interpretation
of the statute.  Under the successive reenactment doctrine, if
Congress reenacts without change the statutory language that has
been construed by the agency administering that statute,
Congress' decision not to change that statutory language may be
persuasive evidence that the agency's construction is the one
intended by Congress.  See Commodity Futures Trading Commn. v.
Schor, 478 U.S. 833, 845-846 (1986).

entered into or a judgment is rendered and all appeals are exhausted.  See <u>United States v. Safety Car Heating & Lighting Co.</u>, 297 U.S. 88 (1936).  Petitioner contends that a fundamental tax principle cannot be "repealed"[9] by respondent without explicit congressional authorization, and no such authorization is present in this case.

It is true that Congress did not explicitly state that the all events test should not apply with respect to contingent items for purposes of long-term contracts.  However, because the section 460 version of the percentage of completion method is a self-contained, statutorily created form of accounting method which varies substantially from prior accrual accounting methodology, we do not believe that an explicit statement from Congress regarding the all events test is necessary to validate the regulation.  The section 460 approach to the percentage of completion method is the method of accounting that Congress chose for the reporting of long-term contract income in order to modify the deferral of income previously permitted.  While section 1.451-3(d)(3), Income Tax Regs., incorporated aspects of the all events test under the completed contract method, Congress is free to change the method of accounting with respect to long-term

---

[9] Petitioner's use of the term "repealed" is a misnomer because the all events test was developed as a principle of case law and embodied in regulations.  Congress has implicitly approved of this principle by not subsequently legislating otherwise.

contracts without retaining the all events test or explicitly stating that the all events test is not to be utilized.

Petitioner also contends that the section 460(b)(1)(B) parenthetical language "with respect to any amount properly taken into account after completion of the contract, when such amount is properly taken into account" indicates an intent to include the all events test as part of the percentage of completion method.  While this language does contemplate the resolution of some items after the year the contract is completed, there is no indication that Congress intended this language to incorporate the all events test in the percentage of completion method of section 460.  The phrase "amount properly taken into account after completion of the contract" could include amounts properly taken into account for reasons unrelated to the all events test. For example, it is possible for a long-term contract to be complete for tax purposes even though the taxpayer reasonably expects to incur additional unforeseeable costs in a post-completion tax year.  It is also possible that contingent items, such as disputed claims, cannot be reasonably estimated before the completion of the contract, in which case revenue from those disputed claims would not be taken into account until after the completion of the contract.  Moreover, the parenthetical language indicates an intent to use the all events test for purposes of adjusting the "actual" contract price.  Cf. sec. 460(b)(2); sec.

1.460-6(c)(1)(ii)(A), Income Tax Regs.  However, the "actual" contract price is to be contrasted with the "estimated" contract price, the latter of which is not governed by the all events test.  Thus, we decline to read the parenthetical language as evidence of congressional intent to apply the all events test to taxpayers' disputed claims for purposes of computing the estimated contract price.

Furthermore, the language relied on by petitioner is employed in the context of how the look-back method operates. Taxpayers are required to apply the look-back method to any amounts that are taken into account after completion of the contract.  Thus, if income is received and properly accounted for 5 or 10 years after completion of the contract, those revenues are discounted back to the year of completion, and the look-back method is applied.  Such application would likely result in underpayment interest due by the taxpayer if post-completion revenues were not included in the estimated total contract price at the time it was reasonably expected that they would be received by the taxpayer.

In addition, requiring the inclusion of an estimate of disputed claims in the total contract price as soon as the taxpayer reasonably expects to receive them will reduce the likelihood that a taxpayer will have to pay look-back interest. The purpose of the look-back method is to offset the time-value

effects of using estimates during the life of a contract that may differ from the actual amounts determined upon completion. Because the all events test does not recognize income until it is fixed and determinable, requiring use of the all events test would render moot any "estimating" of the total contract price, lead to additional timing differences (income deferrals) and likely require taxpayers to pay more look-back interest. Moreover, the statute by its plain language calls for the use of "estimated" contract price and costs.

Petitioner relies on Professional Equities, Inc. v. Commissioner, 89 T.C. 165 (1987), contending that we should declare the "contingent items" regulation invalid to the extent it purports to regulate the contents of a long-term contract's total contract price. We do not view Professional Equities, Inc. as support for invalidation of the subject regulation. The temporary regulation considered in Professional Equities, Inc. was designed to overturn a long line of precedent beginning with the holding in Stonecrest Corp. v. Commissioner, 24 T.C. 659 (1955). In Stonecrest Corp., we held that the "assumed" and "subject to" rules in the regulations interpreting former section 453(c) did not apply to wraparound mortgages. The regulation at issue in Professional Equities, Inc. was at variance with the Stonecrest Corp. line of cases as well as being at odds with the language of the statute. In Professional Equities, Inc. v.

Commissioner, supra at 180, we invalidated the temporary regulation and concluded that the Secretary did not have discretion to "reach a result contrary to the basic objective of the statute by requiring the recognition of additional gain beyond what is proportionately reflected in the payments received during the first year."[10]  The regulation we consider here is a reasonable interpretation of the statutory intent and in harmony with the overall purpose of the legislative initiative.  Thus, we do not view Professional Equities, Inc. as instructive with regard to the validity of the subject regulations.

Finally, petitioner argues that the subject regulations should be declared invalid because of the alleged difficulty for taxpayers to determine when they have a reasonable expectation of recovery on a disputed claim.  We recognize that the regulation's "reasonable expectancy" standard may result in difficulties in the determination of when a contingent item can be reasonably expected to be received.  By promulgating such a regulation, respondent may be called upon to determine when it is reasonably foreseeable that a contingent item will be received by a taxpayer.  This may not be an easy task, and in petitioner's case, there is no indication whether respondent will prevail in such a controversy.  However, difficulty of this kind is not a

---

[10] The Court also noted that the regulation was "tortuously complex" and was not compatible with the goals of the statute.

reason to invalidate the regulation; the determination of when a contingent item can be reasonably expected to be received can be made on a case-by-case basis. The regulation is a reasonable interpretation of, and plainly consistent with, the underlying statute.[11]

In light of the foregoing, we hold that section 1.460-6(c)(2)(vi), Income Tax Regs., is valid because it harmonizes with the plain language, origin, and purpose of section 460.

We have considered the parties' remaining arguments and find them either irrelevant or unnecessary for resolving the parties' controversy. To reflect the foregoing,

An order will be issued
denying petitioner's motion for
partial summary judgment.

---

[11] Although petitioner's position may also be a reasonable interpretation, we are constrained to uphold the regulation if it has a reasonable basis in the statutory history, even though petitioner's challenge may have some logical force. See Pagel, Inc. v. Commissioner, 91 T.C. 200, 218 (1988), affd. 905 F.2d 1190 (8th Cir. 1990).