105 T.C. No. 25


UNITED STATES TAX COURT


JOHN M. CAMERON AND CAROLINE D. CAMERON,
AND JOHN P. AND TEENA G. BROADAWAY, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 2137-94.          Filed November 29, 1995.


        Ps were shareholders of X, which computed its
earnings and profits under the percentage of completion
method of accounting.  X elected to be taxed as an S
corporation and, in a subsequent taxable year,
distributed a dividend to Ps.
        <u>Held</u>, for purposes of measuring the amount of the
dividend, X's earnings and profits for its last taxable
year as a C corporation must be computed on the basis
of year-end estimates of the total costs of its long-
term contracts.  The estimates may not be revised
retroactively to reflect actual costs, and earnings and
profits may not be adjusted for subsequent taxable
years to which the subchapter S election applied.

<u>Edgar J. Tyler</u>, for petitioners.

<u>Michael F. O'Donnell</u>, for respondent.

OPINION

LARO, Judge: The Camerons and Broadaways (petitioners) jointly petitioned for redetermination of Federal income tax deficiencies determined by respondent as follows:

|  | Year | Deficiency |
| --- | --- | --- |
| Broadaways | 1989 | $18,705.89 |

|  | Year | Deficiency |
| --- | --- | --- |
| Camerons | 1989 | $45,102.35 |
|  | 1990 | 6,289.11 |

After concessions by the parties, we must decide two remaining questions that will determine the extent to which petitioners recognized dividend income from a distribution by Cameron Construction Co. (Company) in 1989:

(1) Whether Company's contemporaneous estimates of the cost of completing its long-term contracts may be revised retroactively in computing earnings and profits under the percentage of completion method. We hold that they may not.

(2) Whether Company's earnings and profits may be adjusted for taxable years to which its subchapter S election applied. We hold that they may not.

## Stipulations

This case was submitted on the basis of a fully stipulated record. The stipulations of fact and attached exhibits are incorporated herein by this reference.

At the time they filed their joint petition, the Broadaways resided in Bono, Arkansas, and the Camerons resided in Jonesboro, Arkansas. Petitioners were shareholders in Company during the taxable years at issue. Company is engaged in the road and highway construction business. Company calculated its income from construction contracts under the completed contract method of accounting. Accordingly, it was required by section 312(n)(6)[1] to compute its earnings and profits as if it used the percentage of completion method of accounting. Company elected to be taxed as an S corporation, pursuant to section 1362(a), effective following the close of its taxable year ended October 31, 1988. As an S corporation, Company's first tax year was a short year ending December 31, 1988, and Company thereafter reported on a calendar year basis.

At some time during its 1989 taxable year, Company made a distribution to petitioners. The distribution is taxable to petitioners as a dividend to the extent of the accumulated earnings and profits of the Company existing on December 31, 1989. The parties have specified four alternatives:

(1) If Company's earnings and profits must be computed as of the end of each taxable year on the basis of reasonable contemporaneous estimates of the costs to complete its

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the taxable years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

construction contracts, and may not be adjusted for taxable years ended after October 31, 1988, then the accumulated earnings and profits and resulting deficiencies for the 1989 taxable year are:

| E&P | Broadaways | Camerons |
|-----|-----------|----------|
| $251,650.13 | $19,126.69 | $46,014.36 |

(2) If Company's earnings and profits may be computed as of the end of each taxable year on the basis of the actual contract costs determined thereafter, but may not be adjusted for taxable years ended after October 31, 1988, then the accumulated earnings and profits and resulting deficiencies for the 1989 taxable year are:

| E&P | Broadaways | Camerons |
|-----|-----------|----------|
| $163,580 | $12,860.57 | $30,901.69 |

(3) If Company's earnings and profits must be computed as of the end of each taxable year on the basis of reasonable contemporaneous estimates of the costs to complete its construction contracts, and may be adjusted for taxable years ended after October 31, 1988, then the accumulated earnings and profits and resulting deficiencies for the 1989 taxable year are:

| E&P | Broadaways | Camerons |
|-----|-----------|----------|
| $141,738.76 | $11,392.81 | $27,153.55 |

(4) If Company's earnings and profits may be computed as of the end of each taxable year on the basis of the actual contract costs determined thereafter, and may be adjusted for taxable

years ended after October 31, 1988, then the accumulated earnings and profits and resulting deficiencies for the 1989 taxable year are:

| E&P | Broadaways | Camerons |
|-----|-----------|----------|
| ($21,851.09) | $2,323 | $3,109 |

Our task is to select the one alternative, if any, that is in accordance with the governing law.

## Discussion

It is undisputed that Company was required to use the percentage of completion method for purposes of computing its earnings and profits. Sec. 312(n)(6). The first issue is how to perform this computation. Under section 460 as enacted by the Tax Reform Act of 1986, Pub. L. 99-514, sec. 804, 100 Stat. 2358, gross income from a long-term contract is taken into account as the work progresses. The amount of gross income from a long-term contract that is accrued for each taxable year is that proportion of the expected total contract income that the amount of costs incurred through the end of the taxable year bears to the total expected costs, reduced by cumulative amounts of contract income that were reported for previous taxable years. Sec. 460(b); H. Rept. 99-426, at 630 (1986), 1986-3 C.B. (Vol. 2) 630; see also Kollsman Instrument Corp. v. Commissioner, T.C. Memo. 1986-66, affd. 870 F.2d 89 (2d Cir. 1989); Berger Engg. Co. v. Commissioner, T.C. Memo. 1961-292.

The second issue is how the computation of Company's earnings and profits was affected by its election under subchapter S effective November 1, 1988. Absent the election, Company would have continued to accrue income from its long-term contracts for earnings and profits purposes on the basis of year-end estimates of total contract costs. The earnings and profits available for distribution to petitioners in 1989 would have been determined on the basis of estimated costs to complete contracts in progress on the last day of Company's 1989 taxable year. The result is not the same under subchapter S.

The basic purpose of the earnings and profits account is to keep track of the amount of corporate funds that have not yet been taxed to shareholders. When a corporation elects pass-through treatment under subchapter S, its net income earned as an S corporation is taxed currently to the shareholders and thereafter is generally distributed tax-free. Secs. 1366(a), 1368(b)(1), (c)(1). In accordance with the much more limited role of earnings and profits in a pass-through system of taxation, section 1371 provides, for taxable years after 1982, that the accumulated earnings and profits that an S corporation carries over from pre-election years when it was a C corporation, generally are not adjusted for the taxable years during which the election is in effect. Sec. 1371(c)(1); S. Rept 97-640, at 20 (1982), 1982-2 C.B. 718, 720 (accompanying Subchapter S Revision Act of 1982, Pub. L. 97-354, 96 Stat. 1669). While exceptions

apply in certain cases, none are relevant on these facts.  Sec. 1371(c)(2) and (3), (d)(3).  It follows that after its conversion to an S corporation, through the end of 1989 there was no change in the amount of Company's earnings and profits computed on the basis of estimates made as of October 31, 1988.

Petitioners' argument starts with the proposition that earnings and profits for a given taxable year should measure as accurately as possible the current ability of the corporation to make distributions to shareholders without impairing its capital. They concede that in preparing annual tax returns using the percentage of completion method Company would have been required to compute earnings and profits on the basis of the limited information that was available at the time.  Yet, they contend, where, as here, earnings and profits for the years at issue can be recomputed when more information about the costs of Company's long-term contracts is known, they should not be bound by the estimates reflected on Company's original returns.  In petitioners' view, accuracy requires the use of additional information that has subsequently become available.  Although petitioners' primary position is that the concern for accuracy in computation of earnings and profits should override the freeze on earnings and profits provided for by section 1371(c)(1), they argue in the alternative that even if earnings and profits were frozen as of the effective date of Company's subchapter S election, "I.R.C sec. 1371(c)(1) does not disallow or forbid

'correcting' the 'C' corporation earnings and profits if the figures as of the date of the conversion were inaccurate."

Petitioners' contention that retroactive adjustments are necessary if earnings and profits are to perform their intended function would be more persuasive if no other means of correcting inaccuracies in the accrual of long term contract revenue under the percentage of completion method were available. That is not the case, however. The percentage of completion method has a built-in mechanism for correcting mistaken estimates; it differs from the mechanism that petitioners propose. See Herwitz, "Accounting for Long-term Construction Contracts: A Lawyer's Approach", 70 Harv. L. Rev. 449, 465 & n.49 (1957); H. Rept. 99-426, at 630 (1986), 1986-3 C.B. (Vol. 2) 1, 630. For each year, the cumulative amount of contract revenue that has already been reported in prior years is subtracted from the cumulative amount of contract revenue that is otherwise reportable as of the close of the current year. If in year 1 the taxpayer reports too much revenue and overstates earnings and profits as a result of underestimating the amount of its costs to complete contracts in progress, there will be correspondingly less revenue that remains to be reported for those contracts in succeeding years. The overstatement of earnings and profits in the earlier year may cause shareholders to report a larger amount of any distribution in that year as a dividend. But the lower revenues and higher costs generated in completion of the contracts will reduce

earnings and profits available for distribution in later years, which, in turn, may reduce dividend income for shareholders in these years.  In this way, the percentage of completion method is self-correcting when used consistently over the life of the taxpayer's long-term contracts.

If this self-correcting mechanism had operated to adjust Company's earnings and profits after October 31, 1988, the unexpectedly high costs incurred and the revision of cost estimates in the 1989 taxable year would apparently have had the effect of reducing accumulated earnings and profits as well as the dividends to petitioners in that year.  That petitioners could not take advantage of this mechanism to reduce their dividend income for 1989 was the consequence of electing the provisions of subchapter S, one of which is the freeze on earnings and profits.  Sec. 1371(c)(1).  We do not find this result to be inequitable to petitioners, considering that they would have had no complaint about the accuracy of earnings and profits measurement under the percentage of completion method had Company <u>overestimated</u> its total contract costs as of the time of its subchapter S election rather than underestimating them.  The normal operation of the tax laws will not be adapted to suit the convenience of individual taxpayers.

Petitioners' argument that in the interest of accuracy they should be entitled to use a different adjustment mechanism from that provided for under the percentage of completion method finds

no support in general principles of tax accounting.  On the contrary, the general rule for the timing of income accruals as stated in the regulations is that "Where an amount of income is properly accrued on the basis of a reasonable estimate and the exact amount is subsequently determined, the difference, if any, shall be taken into account for the taxable year in which such determination is made."  Sec. 1.451-1(a), Income Tax Regs.  To allow a taxpayer to reopen the taxable year of the original estimate would, moreover, be inconsistent with the annual accounting principle upon which the Federal income tax is predicated.  The courts have long maintained:

> Income tax liability must be determined for annual periods on the basis of facts as they existed in each period.  * * *  No other system would be practical in view of the statute of limitations, the obvious administrative difficulties involved, and the lack of finality in income tax liability, which would result. * * *

Estate of Block v. Commissioner, 39 B.T.A. 338, 341 (1939), affd. sub nom. Union Trust Co. v. Commissioner, 111 F.2d 60 (7th Cir. 1940); accord Hillsboro Natl. Bank v. Commissioner, 460 U.S. 378, 377 & n.10, 378 n.11 (1983); Healy v. Commissioner, 345 U.S. 278, 284-285 (1953); Burnet v. Sanford & Brooks Co., 282 U.S. 359, 365 (1931).

It does not appear from the stipulated facts that an attempt was made to correct the estimates reflected on Company's original return for the taxable year ended October 31, 1988, by means of an amended return.  The implication of petitioners' argument,

however, is that if a taxpayer in similar circumstances filed an amended return, respondent would be obligated to accept it. The cases hold otherwise: As a corollary to the annual accounting principle, it is well established that where a transaction was properly reported on the original return and the original filing deadline has passed, the acceptance of an amended return that alters the tax consequences of the transaction is generally within the discretion of respondent. Goldstone v. Commissioner, 65 T.C. 113 (1975); Coons v. Commissioner, T.C. Memo. 1983-777; see also Hillsboro Natl. Bank v. Commissioner, supra at 377 n.10.

Accordingly, Company's earnings and profits for its last taxable year as a C corporation must be determined from Company's reasonable estimate, as of October 31, 1988, of its costs to complete construction contracts in progress. The parties have stipulated that this amount is $251,650.13. The rules of subchapter S precluded any adjustment to Company's earnings and profits in the circumstances of this case. See sec. 1371(c)(1). As a result, Company's earnings and profits remained $251,650.13 on December 31, 1989, and the dividend distributed to petitioners in 1989 must be measured by reference to this amount. In

accordance with the parties' stipulation, the deficiency in Federal income tax for 1989 was $19,126.69 for the Broadaways and $46,014.36 for the Camerons.

To reflect the foregoing,

Decision will be entered under Rule 155.