Filed 9/14/23  Steuer v. Cal. Franchise Tax Board CA1/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION THREE

|  |  |
|---|---|
| ALAN STEUER et al.,<br><br>       Plaintiffs and Appellants,<br>v.<br>CALIFORNIA FRANCHISE TAX BOARD,<br><br>       Defendant and Respondent. | A165659<br><br>(City & County of San Francisco Super. Ct. No. CGC-18-571122) |

The trustees of multiple trusts filed actions against the California Franchise Tax Board (FTB) for refund of taxes allegedly overpaid.  As to one of the trusts, the Paula Trust, the action proceeded on a single theory, which was ultimately rejected, and that action was dismissed with prejudice.  The trustees then sought on behalf of the other trusts to press their claims for a refund on other grounds.  The trial court ruled that claim preclusion barred the trustees from litigating these claims and granted summary judgment in favor of the FTB.  The trustees appeal, and we reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. The Trusts and the Businesses

Plaintiffs are Alan Steuer and Stafford Smiley (the Trustees) in their capacity as co-trustees of 157 different trusts (the Trusts).  The Trustees also

1

serve as trustees of the Paula Trust, which is not a party to this action (and is excluded from "the Trusts"). At all relevant times, Steuer was a resident of California, and Smiley was a resident of Maryland.

The Trusts and the Paula Trust were established to benefit the family of Raymond J. Syufy. They held limited-partnership interests in Syufy Enterprises, L.P. (Syufy Enterprises) which in turn was managed by its general partner, Syufy Properties, Inc. (Syufy Properties). The Trusts and the Paula Trust were shareholders in Syufy Properties. Syufy Enterprises wholly owned Century Theatres, Inc. (Century). It also owned theater properties at which Century operated movie theaters and provided business services to Century. These three entities—Syufy Enterprises, Syufy Properties, and Century—jointly operated a movie-theater business in multiple states, including California.

## II. Sale of Century, Tax Returns, and Refund Claims

During its 2007 tax year, Syufy Enterprises sold Century, and it distributed its 2007 income to its partners—the Trusts, the Paula Trust, and Syufy Properties. Syufy Properties in turn provided its shareholders—the Trusts and the Paula Trust—their shares of its income from Syufy Enterprises.

The tax returns of Syufy Properties and Century for the period in question reported an apportionment between income from California sources and non-California sources. Syufy Enterprises' original partnership tax return for the period in question, however, did not allocate income between California and non-California sources. Similarly, the original 2007 California tax returns filed by the Trustees on behalf of the Trusts and the Paula Trust reported all of their income from Syufy Enterprises and Syufy Properties as taxable California-source income.

2

The Trustees later caused the Trusts and the Paula Trust to file amended returns for the 2007 tax year, seeking refunds of amounts they contended were not solely California-source income.  Specifically, the claims for refund recited:  "The stock gain [from the sale of Century] was incorrectly reported by the taxpayer as solely California source income on the taxpayer's original 2007 return.  [¶] Subsequent to the filing of the 2007 return, the taxpayer determined that because [one of] its trustees was a California resident and one was a non-California resident, pursuant to the Revenue and Tax Code . . . it was required to apportion the stock gain as California source and non-California source income.  Accordingly, the taxpayer hereby claims a refund in the amount set for[th] below on the ground the stock gain should be apportioned to California according to the number of trustees resident in California and on the ground such apportionment is consistent with and required by [the applicable law]."  (Block capitalization omitted.)  The FTB did not act on the refund claims.

### III.   The Paula Trust Administrative Appeal and Lawsuit

In September 2013, deeming the claim denied, the trustees of the Paula Trust filed an appeal with the Board of Equalization as a "test case" to resolve the legal issue of whether the trust's income is taxed solely on the basis of the trustees' residency.

The FTB sought a deferral of its time to file its brief in the appeal on the ground it was conducting an audit of the 2007 amended returns for the Paula Trust, several related trusts, and Syufy Enterprises with the intention to determine whether the sale of Century generated California-source income and, if so, the amount of that income.  If the FTB determined the sale did not generate California-source income, the FTB argued, the Paula Trust's appeal might not be necessary.  In another submission, the FTB argued that the

3

administrative appeal did not raise only the legal issue regarding the effect of the trustees' state of residence, but rather required resolution of factual issues regarding the source of the income, matters the FTB was considering in its audit. And, the FTB explained, the issues encompassed in the ongoing audit "would allow [the FTB] to . . . arrive at a factual conclusion regarding the source of income."

Opposing the request for a deferral, counsel for the Paula Trust wrote to the Board of Equalization explaining it wished "this single appeal—*Appeal of Paula Trust*" to proceed to resolve the discrete legal question of whether the residence of the fiduciaries affected the source of the trust's income. It agreed to abide by its original return (which attributed 100 percent of its income to California) and waived the FTB's offer that after audit it might conclude that not all of the trust's income would be sourced to California. The matter proceeded, and the Board of Equalization ultimately ruled against the Paula Trust.

The Paula Trust filed a complaint for refund of taxes in the trial court December 2016 on the ground the trust was required to apportion only half of its income to California because only one of its two trustees was a California resident. (The Paula Trust action.)

The Paula Trust moved for summary judgment or summary adjudication, and the parties entered into a stipulation of facts deemed conceded for purposes of the motion, including that "[a]ll of the income from which a refund is sought . . . on behalf of the Paula Trust and the named trustees is deemed to be California source income if the provisions at Rev. & Tax. Code[,] § 17951 et seq. apply to the Paula Trust," and that the Paula Trust and the Trustees "do not claim a refund of taxes in this action on the basis that the Paula Trust had income from non-California sources." The

4

trial court granted summary judgment in favor of the Paula Trust, and the FTB appealed. (*Steuer v. Franchise Tax Bd.* (2020) 51 Cal.App.5th 417 (*Steuer I*).)

As pertinent here, the question in *Steuer I* was whether "the Revenue and Taxation Code imposes taxes on the entire amount of trust income derived from California sources, regardless of the residency of the trust's fiduciaries." (*Steuer I, supra*, 51 Cal.App.5th at p. 422.) A different panel of this court answered that question in the affirmative, concluding that all of a trust's "California-source income" is taxable, and only income derived outside of California is apportioned according to the number of resident beneficiaries. (*Id*. at pp. 422, 426–431 434.) On remand, the Paula Trust action was dismissed with prejudice.

## IV.    The Present Action

Meanwhile, the FTB's audits of the Trusts' refund claims resulted in a recommendation to deny the claims. The Trustees appealed to the Board of Equalization in January 2014, and the matter was deferred. The parties agree that in November 2018, on plaintiffs' request, the Trusts' administrative appeals were dismissed so the Trusts could seek relief in court.

The Trustees filed this action on behalf of the Trusts, seeking a refund of taxes, on November 6, 2018, and soon thereafter amended the complaint. Originally, they alleged that only half of the Trusts' income was taxable under California law because only one of the two trustees was a resident of California, and that requiring them to pay tax on California-source income earned by a nonresident was unconstitutional. The first amended complaint also alleged that the Trusts' income derived principally from the sale of intangible property (the sale of stock) that did not have its situs in California,

5

and as a result the income was non-California-source income and not fully taxable. (Rev. & Tax Code, § 17952.)[1]

The FTB answered the first amended complaint and moved for a stay of the action pending resolution of the Paula Trust action. It argued that a determination of the legal issues in the Paula Trust case would affect the parties' discovery in the current case, which would include an inquiry into the source of the income and the corporate structure of each of the relevant entities. In opposition, the Trusts argued no stay should be granted, and that at a minimum they should be permitted to litigate the question of whether the income constitutes non-California-source income that was not fully taxable. In its reply, the FTB reiterated that "[whether] or not income is derived from a California source is a factual inquiry, and, unlike in the *Paula Trust* Action, where the plaintiffs did not contest the source of Paula Trust's income, here extensive discovery will be required into the source of each of the 157 different trusts' income." And, the FTB went on, "whether or not the source of income is a relevant inquiry is dependent on the final legal determination as to whether trusts may be taxed on California-source income. This extensive discovery could therefore become moot if the Court of Appeal were to uphold the trial court's determination that sourcing rules do not apply to trust income." The trial court granted the stay pending the appellate court's decision (and any action by the Supreme Court) in the Paula Trust action on April 9, 2019.

After the appellate decision in the Paula Trust action (*Steuer I*) was final, plaintiffs filed a second amended complaint. That complaint was based on three theories: that a portion of the income from the sale of stock and

---

[1] All undesignated statutory references are to the Revenue and Taxation Code.

6

other intangible property does not derive from sources within California because that property did not have a California business situs during the 2007 tax year and one of the trustees was not a California resident (citing § 17952); alternatively, that Syufy Enterprises and Century engaged in a unitary business within and outside of California and a portion of the income in dispute is therefore not California taxable income (citing Code of Reg., Tit. 18, § 17951-4); and finally, that if the FTB treats all of the Trusts' income as California taxable income, it violates the Due Process Clauses of the state and federal constitutions and the Commerce Clause of the federal constitution. Plaintiffs later indicated they would dismiss the first cause of action based on section 17952.

In September 2021, while this litigation was pending, Syufy Enterprises filed an amended return for the 2007 tax year, reflecting an apportionment of Syufy Enterprises', Syufy Properties', and Century's property, payroll and sales, with 66.956 percent within California and 33.044 percent outside California.

The FTB moved for summary judgment on January 5, 2022 on three grounds: plaintiffs failed to exhaust their administrative remedies; based on the Paula Trust action, claim preclusion barred plaintiffs from arguing the Trusts' 2007 income was not California-source income; and on the merits the Trusts' 2007 income was taxable California-source income. The trial court concluded claim preclusion prevented plaintiffs from maintaining their claims in this action, and granted summary judgment without reaching the other grounds. Plaintiffs appealed the ensuing judgment.

7

**DISCUSSION**

## I. Standard of Review

Summary judgment should be granted if there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. (*Huerta v. City of Santa Ana* (2019) 39 Cal.App.5th 41, 46 (*Huerta*).) A genuine issue of material fact exists if the evidence would allow a reasonable person to find a material fact in favor of the opposing party under the applicable standard of proof. (*Id*. at p. 47.)

On appeal, we review the trial court's ruling on the motion for summary judgment de novo, considering all the evidence in the moving and opposition papers except that to which objections were sustained. (*Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 65–66; *Steuer I, supra*, 51 Cal.App.5th at p. 423.) We are not bound by the trial court's reasons for granting summary judgment; rather, we affirm if the judgment is correct on any ground asserted in the motion. (*Huerta, supra*, 39 Cal.App.5th at p. 47.)

Whether claim preclusion applies in a particular case is a question of law that we review de novo. (*Cal Sierra Development, Inc. v. George Reed, Inc.* (2017) 14 Cal.App.5th 663, 673 (*Cal Sierra*); *City of Oakland v. Oakland Police & Fire Retirement System* (2014) 224 Cal.App.4th 210, 228.)

## II. Taxation of Trusts

A trust in California is taxed in the same manner as an individual. (*Steuer, supra*, 51 Cal.App.5th at p. 425; § 17041, subd. (e).) Residents are taxed on all of their income, regardless of its source. (*Steuer*, at p. 424; § 17041, subd. (a)(1).) Nonresidents are taxed on income from sources within California only. (*Steuer*, at p. 424; § 17041, subd. (i)(1)(B).)

When the beneficiaries of a trust have only a contingent interest, the trust is treated as a resident of the state in which the fiduciary resides.

(*Steuer*, *supra*, 51 Cal.App.5th at p. 426; 17742, subd. (a).)  And when there is more than one fiduciary, the trust's income is apportioned according to the number of fiduciaries who reside in California.  (§ 17743.)  Under these rules, this division held in *Steuer*, "a trust is taxed on all California-source income, regardless of whether the fiduciary is a nonresident or not.  Then, non-California-source income is apportioned between California and non-California fiduciaries."  (*Steuer*, at p. 427.)

## III.   Claim Preclusion

Claim preclusion, or res judicata, "prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them.  (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 896; *DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824 (*DKN Holdings*).)  Claim preclusion applies only when the second action involves the same cause of action and is between the same parties or their privies, and there has been a final judgment on the merits in the first action.  (*Grande v. Eisenhower Medical Center* (2022) 13 Cal.5th 313, 323.)  Under this rule, "all claims based on the same cause of action must be decided in a single suit; if not brought initially, they may not be raised at a later date.  ' "Res judicata precludes piecemeal litigation by splitting a single cause of action or relitigation of the same cause of action on a different legal theory or for different relief." ' "  (*Mycogen Corp.*, at pp. 896–897.)

In this context, privity is a requirement of due process, under which the losing party and the nonparty must have had " 'an identity or community of interest,' with 'adequate representation' of that interest in the first suit, and circumstances such that the nonparty 'should reasonably have expected to be bound' by the first suit."  (*DKN Holdings*, *supra*, 61 Cal.4th at p. 826; see *Cal Sierra*, *supra*, 14 Cal.App.5th at p. 673.)  This inquiry requires a " 'close

9

examination of the circumstances of each case.' " (*Victa v. Merle Norman Cosmetics, Inc.* (1993) 19 Cal.App.4th 454, 464.)  The operative question is not the relationship between the persons or entities, but rather "a person's relationship *to the subject matter of the litigation*."  (*Cal Sierra*, *supra*, 14 Cal.App.5th at p. 674.)

The trial court found this standard was met here.  It reasoned that the claims for refund asserted two theories:  one that not all the income reported on the 2007 trust tax returns was from a California source (the " 'source theory' "), and one that the income should be taxed according to the residency of the trustees (the " 'residency theory' ").  Plaintiffs chose to litigate the Paula Trust's claim on only the residency theory; they were unsuccessful and dismissed the claim with prejudice.  The court concluded that the remaining Trusts' claims involved the same causes of action as the Paula Trust action, in that plaintiffs sought recovery in the form of a personal income tax refund.  Although their claims posited two theories of recovery, they suffered only a single injury, giving rise to only one claim for relief.  And, the court concluded, the two actions involved the same parties, the Trustees; the Trusts and the Paula Trust were privies; and there was a final judgment on the merits in the Paula Trust action.

We disagree that the Trusts are precluded from asserting their claims based on the source theory.  The circumstances of this case show clearly that the plaintiffs in the Paula Trust action did *not* represent the Trusts' interest in pursuing their claims in full.  Instead, during the administrative proceedings, the Paula Trust sought to proceed separately to address a "discrete legal question" related to the residence of the Trustees, and it agreed to waive any claim that not all of the income at issue had a California source.  And during the litigation, the Paula Trust plaintiffs conceded only *for*

10

*purposes of their motion for summary judgment or adjudication* that the income for which a refund was sought was California-source income.

Perhaps most significant, while the appeal in the Paula Trust action was pending—that is, before the matter was final—the FTB sought and obtained a stay of proceedings in the current action on the ground that this case involved other issues. The stated basis for the FTB's request for a stay was that, unlike the plaintiffs in the Paula Trust action, the Trusts in this action contest the source of their income, and extensive discovery into this question would be necessary unless the Court of Appeal's decision in the Paula Trust action caused it to become moot. Having successfully prevented the Trusts from litigating the sourcing issue on this ground before the Paula Trust action was final, the FTB may not credibly claim that the Trusts should reasonably have expected those very claims to be precluded by a final judgment in that action.

Because we reach this conclusion, we need not consider whether in other circumstances the Trusts might have been bound by the result in the Paula Trust action.

## IV. Exhaustion of Administrative Remedies

As an alternate ground for summary judgment, the FTB contends the Trusts did not exhaust their administrative remedies by sufficiently raising the source issue in their refund claims. That is because, they argue, the refund claims did not recite that the Trusts contended the income at issue did not derive entirely from California sources. The trial court at least implicitly rejected this ground for summary judgment, explaining in its ruling that each refund claim asserted two theories, one of them that not all the income the Trusts reported was from a California source.

11

As a general rule, a taxpayer seeking a refund of overpaid taxes must exhaust administrative remedies before bringing an action in court. (*Steinhart v. County of Los Angeles* (2010) 47 Cal.4th 1298, 1308; *J.H. McKnight Ranch, Inc. v. Franchise Tax Bd.* (2003) 110 Cal.App.4th 978, 986 (*J.H. McKnight*); § 19382.)  A claim for a refund must set forth the grounds on which the claim is founded.  (*Preston v. State Bd. of Equalization* (2001) 25 Cal.4th 197, 206 (*Preston*); § 19322.)  A trial court may consider only grounds set forth in the administrative claim.  (*Preston*, at p. 206; *Atari, Inc. v. State Bd. of Equalization* (1985) 170 Cal.App.3d 665, 672–673; § 19382.)

The purpose of this rule is to ensure the FTB has sufficient notice of the claim and its basis, and an opportunity to correct any mistakes, thus conserving judicial resources.  (*Preston, supra,* 25 Cal.4th at p. 206.)  But the rule is not applied woodenly.  "Where the contention is intertwined with contentions expressly raised in the refund claim, courts may consider that contention even though the claim did not explicitly raise it."  (*Preston*, at p. 206.)  No particular form of notice is required; moreover, "[i]f the [FTB] has notice of the taxpayer's argument from whatever source during the course of resolving the claim for refund, it has the opportunity to reevaluate its position, reach the correct result, and obviate the need for a subsequent lawsuit."  (*J.H. McKnight, supra,* 110 Cal.App.4th at pp. 986–987.)  Thus, the requirement of administrative exhaustion does not force us to "ignore actual notice the [FTB] may have had from sources other than the four corners of the initial claim."  (*Id*. at p. 987; accord, *Franchise Tax Bd. Limited Liability Corp. Tax Refund Cases* (2018) 25 Cal.App.5th 369, 386; see also *Wallace Berrie & Co. v. State Bd. of Equalization* (1985) 40 Cal.3d 60, 66, fn. 2 [exhaustion challenge rejected when issue was implicit in claim and Board's trial stance showed it was aware of issue].)  We construe a tax refund claim

liberally in favor of the applicant. (*J.H. McKnight*, at p. 988.) Whether the FTB had actual notice of the basis for a claim is a question of fact. (See *id*. at p. 990.)

Under these standards, the FTB has not met its burden to show there is no triable issue as to whether plaintiffs exhausted their administrative remedies. First, the refund claims recited that the stock gain at issue here "was incorrectly reported by the taxpayer as solely California source income" on the original 2007 return. Although the claims went on to discuss at greater length the Trusts' theory that taxation should be based on the Trustees' state of residency, they may plausibly be read to include a challenge to the source of the income, unrelated to residency. Further evidence that the FTB knew during the administrative proceedings that the Trusts' refund claims implicated the source issue is found in their request for a deferral of the Paula Trust appeal to the State Board of Equalization: the FTB stated that it was conducting audits and seeking to determine whether the sale of Century generated California-source income and, if so, the amount of that income, and argued that the appeal included factual questions about the source of the income. Indeed, the FTB itself told the trial court when seeking a stay of this action that that this case—unlike the Paula Trust action—raises the question of the source of the Trusts' income.

In a footnote, the FTB points out that the claims sought a refund only of taxes on gains from the sale of Century stock, but the second amended complaint in this action alleges that Syufy Enterprises is also entitled to a refund for taxes on "other income from intangible property, including gains from the sale of stock and interest and dividend income." These additional amounts, the FTB informs us in another footnote, comprise a very small portion of the Trusts' 2007 income. Nevertheless, the FTB contends, having

13

failed to seek these apparently insignificant amounts in their refund claim, the Trusts cannot seek them in this action. We need not consider points raised only in a footnote. (*Evans v. Centerstone Development Co.* (2005) 134 Cal.App.4th 151, 160.) In any case, nothing we say bars the FTB from arguing this point in the trial court. We hold simply that summary judgment based on exhaustion of administrative remedies is unwarranted.

## V. California-Source Income

We thus proceed to the third ground for the motion for summary judgment: that the undisputed facts show, as a matter of law, that the Trusts' 2007 income was taxable California-source income.

There seems to be no dispute about many of the legal principles governing the taxability of the Trusts' income. The parties agree that Syufy Enterprises, Syufy Properties, and Century comprise a "unitary business" for purposes of the tax laws. Unitary businesses that operate in California are subject to the Uniform Division of Income for Tax Purposes Act (§ 25120; Uniform Act). (*J.P. Morgan Trust Co. of Delaware v. Franchise Tax Bd.* (2022) 79 Cal.App.5th 245, 263.) Under the Uniform Act, income "is divided into two categories based on the corporation's activities: business income, which is apportioned to each state via a formula, and nonbusiness income, which is generally allocated directly to the taxpayers' commercial domicile." (*Ibid.*; §§ 25121, 25128, subd. (a).) Business income is "income arising from transactions and activity in the regular course of the taxpayer's trade or business and includes income from tangible and intangible property if the acquisition, management, and disposition of the property constitute integral parts of the taxpayer's regular trade or business operations." (§ 25120, subd. (a).) All other income is nonbusiness income. (§ 25120, subd. (d).) The

14

parties appear to agree that the income at issue here is business income and thus subject to allocation under the Uniform Act.

Nor is there any dispute about the second legal principle here: that the gain realized by Syufy Enterprises when it sold Century should be passed through to the Trusts " 'in exactly the same form as received by the [entity].' " (*J.P. Morgan*, at p. 274, quoting *Heller v. Franchise Tax Bd.* (1994) 21 Cal.App.4th 1730, 1736; see *Valentino v. Franchise Tax Bd.* (2001) 87 Cal.App.4th 1284, 1291 (*Valentino*).) That is, if the income was California-sourced when Syufy Enterprises received it, it remained California-sourced when passed through to the trusts; and if part of the income was properly allocated to other states when Syufy Enterprises received it, it has the same characterization when the trusts obtained it.

The question at the heart of this dispute, then, is whether the gain all qualifies as California-source income, instead of being allocated among the various states in which Syufy Enterprises, Syufy Properties, and Century did business. The FTB contends we should answer that question in the affirmative. Its argument is founded on Syufy Enterprises' original tax return for the relevant time period, which did not apportion any of its income to other states. The FTB argues that this original return was "proper[]" and that the Trusts are bound by that tax return, which Syufy Enterprises did not seek to amend until 2021. But the foundation of FTB's argument is not that the undisputed facts establish that all of Syufy Enterprises' income was *in fact* derived solely from California sources; rather, in this court it contends it need not look beyond the four corners of Syufy Enterprises' original tax return to ascertain the character of the Trusts' pass-through income.

For this result, the FTB first argues that, "[Syufy ]Enterprises having properly reported its sale of Century on its original partnership return," the

15

FTB was not obliged to accept an amended return altering the tax consequences of the sale. The only authority it cites for this proposition is *Cameron v. Commissioner* (1995) 105 T.C. 380 (*Cameron*). The petitioners there were shareholders in a company that, following the close of its taxable year ended October 31, 1988, elected to be taxed as an S corporation rather than a C corporation. (*Cameron*, at pp. 381–382; 26 U.S.C. § 1361 et seq.)[2] In a manner similar to the partnership at issue here, an S corporation's shareholders pay taxes as if they had received or incurred income, losses, etc. directly from the same source as the corporation (26 U.S.C. § 1366, subd. (b); see *id.*, § 702, subd. (b) [partnership].) Between November 1, 1988 and December 31, 1989, the corporation's costs to complete its construction contracts exceeded the reasonable estimates it had used under the "percentage of completion" method when calculating earnings and profits for its last taxable year as a C corporation. (*Cameron*, at pp. 382–385; see *Broadaway v. C.I.R.* (8th Cir. 1997) 111 F.3d 593, 595 (*Broadaway*) [affirming *Cameron*].) Had it continued to be taxed as a C corporation, those additional costs could have been taken into account when computing the following year's earnings and profits. (*Cameron*, at p. 385.)

The question in *Cameron*, as relevant here, was whether the company's previous estimates of its earnings and profits, based in part on expected costs to complete contracts, could be revised retroactively after the company elected to be taxed as an S corporation. (*Cameron, supra,* 105 T.C. at p. 381.) The Tax Court answered that question in the negative. The statutory scheme provided that accumulated earnings and profits carried over from the period

_____

[2] California generally applies federal law to tax treatment of both partnerships and corporations, and there is "substantial similarity between the federal partnership and S corporation provisions." (*Valentino, supra,* 87 Cal.App.4th at p. 1294; §§ 17851, 23800.)

before a corporation elected to become an S corporation are generally not adjusted for later tax years when the election is in effect. (*Id.* at p. 384; 26 U.S.C. § 1371, subd. (c)(1).) The Tax Court concluded the company was bound by its original estimates of its earning and profits, reasoning that this was the result of the election to use the provisions governing S corporations, "one of which is the freeze on earnings and profits." (*Cameron*, at p. 385.) Moreover, "where a transaction was properly recorded on the original return and the original filing deadline has passed, the acceptance of an amended return that alters that tax consequences of the transaction is generally within the discretion of [the IRS]." (*Id.* at pp. 386–387.)

Affirming *Cameron*, the Eighth Circuit Court of Appeals addressed the taxpayers' argument that, as a matter of fairness, the company should be allowed to revise the profits and losses retroactively to reflect more accurately the higher costs actually incurred in completing the contracts. The court explained, "This argument is not unattractive, but . . . , cannot prevail. Once the Company elected to be taxed under Subchapter S, the taxpayers thereafter were prevented from taking advantage of the adjustments to earnings and profits normally available [to C corporations] . . . . This no-retroactive-recomputation rule is plainly established in the applicable statutory provisions, and represents a burden the taxpayers necessarily assumed in order to gain the benefits of being taxed as an S corporation . . . ." (*Broadaway*, *supra*, 111 F.3d at p. 597.)

*Cameron* does not establish that Syufy Enterprises' original return, which did not apportion income, binds all the Trusts. Rather, it is expressly predicated on a statute that "freeze[s]" earnings and losses upon election to be taxed as an S corporation. (*Cameron*, *supra*, 105 T.C. at p. 385.) No such statute is at issue here. Also, in *Cameron* the shareholders were bound when

17

the S corporation "properly" reported the transactions at issue on its original returns using the then-applicable accounting method. (*Id.* at pp. 386–387.) Here, on the other hand, the Trusts' position is that Syufy Enterprises' original return, which did not allocate between sources within and outside California, did *not* properly report the sale of Century. *Cameron* is, accordingly, not dispositive, and the FTB fails to establish that the manner in which income was reported on a partnership's tax return is not subject to amendment, regardless of its accuracy.

The FTB's remaining contentions need not detain us long. It contends that because Syufy Properties and Century apportioned their business income, thus avoiding California tax on their non-California-source income, Syufy Enterprises cannot apply the same apportionment factors to *its* income. The Trusts respond that this proposition violates the rule requiring apportionment be done "of the unitary enterprise overall." (*Barclays Bank Internat., Ltd. v. Franchise Tax Bd.* (1992) 2 Cal.4th 708, 715; *Container Corp. v. Franchise Tax Bd.* (1983) 463 U.S. 159, 170; *Citicorp North America, Inc. v. Franchise Tax Bd.* (2000) 83 Cal.App.4th 1403, 1411; 18 Cal. Code Regs, 25106.5, subd. (c)(7)(B).) In any case, the FTB cites to no authority for its argument, and "[w]e need not consider an argument for which no authority is furnished." (*Dabney v. Dabney* (2002) 104 Cal.App.4th 379, 384; see *In re J.M.* (2023) 89 Cal.App.5th 95, 114; *Nickell v. Matlock* (2012) 206 Cal.App.4th 934, 947; *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784–785 (*Badie*).) We therefore need not resolve this point.

In a single paragraph, the FTB also contends that "unitary entities may combine their apportionment factors only as provided by statutes and Board regulations," and may not do so in the circumstances of this case. But it provides no analysis that would allow us to conclude as a matter of law

that gains from the sale of Century should not be allocated to non-California sources. We need not "examine undeveloped claims or . . . supply arguments for the litigants." (*Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52; see *Badie, supra*, 67 Cal.App.4th at pp. 784–785 [point waived when not supported with reasoned argument].)

Finally, the FTB contends that Syufy Enterprises' amended 2007 returns, submitted in 2021 while this action was pending, are irrelevant because the Trusts did not amend their own returns to reflect the new allocation, and it is too late now for them to file for a refund based on the allocations reported in Syufy Enterprises' amended return. (§ 19306, subd. (a) [refund claim must be filed within four years of filing return].) But the Trusts *did* file for a refund, the claim at issue in this case, and we have already concluded the source of their income is properly at issue in this action.

In sum, the FTB has not shown there is no triable issue of fact as to the source of the Trusts' income. Summary judgment is therefore improper. Nothing we say, however, is intended to foreclose the FTB from arguing on remand that Syufy Enterprises' original tax return was accurate or that the income in question was in fact derived solely from California sources.

## DISPOSITION

The judgment is reversed. Appellants shall recover their costs on appeal.

TUCHER, P.J.

WE CONCUR:

PETROU, J.
RODRÍGUEZ, J.

*Steuer et al v. California Franchise Tax Board* (A165659)

19